1  Lee R. Bogdanoff (State Bar No. 119542)
   David M. Stern (State Bar No. 67697)
2  Matthew C. Heyn (State Bar No. 227474)
   KLEE, TUCHIN, BOGDANOFF & STERN LLP
3  1999 Avenue of the Stars, 39th Floor
   Los Angeles, California  90067-6049
4  Telephone:    (310) 407-4000
   Facsimile:    (310) 407-9090
5  Email: lbogdanoff@ktbslaw.com, dstern@ktbslaw.com
            mheyn@ktbslaw.com
6
   General Bankruptcy Counsel for
7  Alfred H. Siegel, Chapter 7 Trustee

8

9              UNITED STATES BANKRUPTCY COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11                 LOS ANGELES DIVISION

12  In re                              Case No:  2:08-bk-21752 BB

13  INDYMAC BANCORP, INC.,             Chapter 7

14            Debtor.

15

16

17  ALFRED H. SIEGEL, solely in his capacity    Adversary Proc. No. _____
    as Chapter 7 Trustee of the estate of
18  IndyMac Bancorp, Inc.,             **COMPLAINT:**

19            Plaintiff,              **(1) OBJECTING TO FDIC CLAIM;**
                                       **(2) FOR SUBORDINATION OF FDIC**
20       v.                            **CLAIM; (3) COUNTERCLAIM FOR**
                                       **DECLARATORY RELIEF**
21  FEDERAL DEPOSIT INSURANCE
22  CORPORATION, in its capacity as
    Receiver of IndyMac Bank, F.S.B. and as
23  Conservator of IndyMac Federal Bank,
    F.S.B.,
24
25            Defendant.

26

27

28

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

Alfred H. Siegel, solely in his capacity as Chapter 7 Trustee ("Mr. Siegel" or the "Trustee") of the estate of Debtor IndyMac Bancorp, Inc. ("Bancorp"), for his claims against the defendant herein, alleges as follows:

## JURISDICTION AND VENUE

1.      This adversary proceeding arises out of and is related to the bankruptcy case *In re IndyMac Bancorp, Inc.*, Case No. 2:08-21752-BB (the "Bankruptcy Case"), which case was commenced on July 31, 2008 and is currently pending in the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "Court").

2.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334(b).

3.      Venue in this Court is proper pursuant to 28 U.S.C. § 1409(a).

4.      This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), (C), (F), (H) and (O).

5.      This objection to claim, also seeking subordination of those claims if they are allowed, and counterclaiming for declaratory relief, is properly brought by adversary proceeding pursuant to Fed. R. Bankr. P. 3007(b) and 7001(8) & (9).

## PARTIES

6.      On August 4, 2008, the United States Trustee duly appointed Mr. Siegel interim Chapter 7 Trustee.  On December 4, 2008, the Court entered an order duly appointing Mr. Siegel permanent Chapter 7 Trustee.  The Trustee has standing to bring the claims alleged herein on behalf of the Bancorp estate.

7.      Defendant Federal Deposit Insurance Corporation (the "FDIC") is the federal agency charged with, among other duties, administering the Federal Deposit Insurance Act, 12 U.S.C. §§ 1811, *et seq.* (the "FDI Act") and the federal bank deposit insurance system established thereunder.  As described below, on November 26, 2008, the FDIC filed a proof of claim (the "FDIC Proof of Claim") in the bankruptcy estate in its capacity as Receiver of IndyMac Bank, F.S.B. and as Conservator of IndyMac Federal Bank, F.S.B.  By this Complaint, the Trustee sues the FDIC in its capacity as Receiver of IndyMac Bank, F.S.B.,

1   and in its capacity as Conservator and Receiver of IndyMac Federal Banks, F.S.B.  This

2   adversary proceeding, *inter alia*, requests that the Court disallow or, to the extent it is

3   allowed, subordinate the FDIC Proof of Claim.  As set forth below, separately, and in a

4   different forum, the Trustee intends to assert claims for affirmative relief against the FDIC in

5   its capacity as Receiver of IndyMac Bank, F.S.B., and in its capacity as Conservator and

6   Receiver of IndyMac Federal Banks, F.S.B. [1]

7           **FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

8        8.     On July 11, 2008, the Federal Office of Thrift Supervision ("OTS") closed

9   IndyMac Bank, F.S.B. ("IndyMac Bank").  The FDIC placed IndyMac Bank into federal

10   conservatorship on July 17, 2008, seizing control of IndyMac Bank's books, records and

11   other papers, all of which were physically maintained at the bank.  Subsequently, the FDIC

12   placed IndyMac Bank into receivership.

13        9.     On July 31, 2008 (the "Petition Date"), Bancorp filed a petition for relief under

14   Chapter 7 of the Bankruptcy Code.

15        10.    Shortly after his appointment as Trustee, the Trustee learned that the FDIC was

16   in custody, control and possession of substantially all of Bancorp's books, records and other

17   papers.

18   **Bancorp's Efforts to Obtain Information from the FDIC.**

19        11.    On September 10, 2008, the Trustee requested various documents and other

20   materials concerning Bancorp's financial information, including, but not limited to,

21

22   [1]  On February 24, 2009, the Court entered the *Order Approving Stipulation for Entry of*

23   *Order Regarding Sale of FF&E and Reservation of Rights* [Bankr. Docket No. 261] (the

24   "FF&E Order").  As described in the FF&E Order, the FDIC, *inter alia*, has the
obligation to indemnify and promptly reimburse the Bancorp estate in cash in an amount

25   equal to the value of the Bancorp estate's interest in certain physical property (consisting

26   of furniture, fixtures and equipment, including, but not limited to, software applications
and IT equipment, servers and storage systems) that were transferred as part of the sale of

27   certain assets to IMB HoldCo LLC or its designee.  By this Complaint, the Trustee does
not bring, and hereby reserves, *inter alia*, any claims of the Bancorp estate described in

28   the FF&E Order.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

1  supporting detail for Bancorp's General Ledger for the period January 1, 2004 to July 4,

2  2008, detail regarding certain classes of Bancorp's assets, paid and unpaid invoices, bank

3  statements and underlying detail, and additional information regarding capital contributions.

4  12.  On September 17, 2008, the Trustee supplemented his September 10, 2008

5  request by requesting additional materials.

6  13.  In late October 2008, the FDIC provided the Trustee's counsel with access to a

7  limited number of documents stored in two file rooms at IndyMac Bank's headquarters in

8  Pasadena, California.  These materials included the Bancorp's Board materials (which was

9  an item responsive to the September 2008 requests), files relating to regulatory matters,

10  personal files for senior officers, a limited selection of work papers and audit reports from

11  Ernst & Young, LLP, and corporate governance materials.

12  14.  In mid-December 2008, the FDIC provided Trustee's counsel with access to a

13  limited number of documents responsive to the September 2008 requests, including, among

14  others, the Bancorp's General Ledger for the period July 2007 to July 2008 with trial

15  balances (in Excel format only), bank statements for all known Bancorp accounts, and

16  documents related to the Bancorp's off-balance sheet assets.

17  15.  In January 2009, the Trustee filed a motion under Fed. R. Bankr. P. 2004 (the

18  "2004 Motion") seeking additional documents and information related to the FDIC's sale of

19  IndyMac Bank's assets.  The Bankruptcy Court granted the 2004 Motion that same month.

20  16.  In February and March of 2009, and again in early June 2009, the Trustee

21  continued his efforts to obtain documents and information regarding Bancorp's finances,

22  including the various downstream transfers addressed below.

23  17.  Despite the Trustee's diligent efforts described above and ongoing discussions

24  with the FDIC regarding providing the Trustee with access to this material, to date, much of

25  the information that the Trustee has requested remains outstanding.  Accordingly, given that

26  the Trustee has been unable to review adequately Bancorp's books, records, and other papers

27  or confer with all relevant employees, the Trustee has prepared this Complaint based on the

28  limited information available to him.

3

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

**The Trustee's Proof of Claim**

18.    On October 13, 2008, the Trustee served on the FDIC a timely proof of claim (the "Trustee Proof of Claim") asserting claims against the IndyMac Bank Receivership in compliance with Section 11 of the FDI Act, 12 U.S.C. § 1821.  A true and correct copy of the Trustee Proof of Claim is attached hereto as Exhibit A.

19.    In the Trustee Proof of Claim, the Trustee sought an "undetermined amount in excess of $754,437,000."

20.    The Trustee Proof of Claim explains that it is based, in part, on the downstreaming of assets from Bancorp to IndyMac Bank and on the FDIC's unilateral repudiation of the Tax Sharing Agreement (defined below).

21.    The Trustee Proof of Claim further explains that the Trustee "reserve[s] [his] right to bring additional claims based upon information that the FDIC currently has not shared" with the Trustee, "in light of the lack of access to books and records and personnel that are currently in the custody and control of the FDIC."  The Trustee further explains that he reserves the right "to amend this [Proof of Claim] to conform to proof and to assert additional damages and liabilities."

**The FDIC's Disallowance of the Trustee's Proof of Claim**

22.    On April 12, 2009, just before the expiration of the 180-day period during which the FDIC was required by the FDI Act to determine whether to allow or disallow the Trustee Proof of Claim, *see* 12 U.S.C. § 1821(d)(4)(A)(1), the FDIC requested a 30-day extension to respond to the Trustee Proof of Claim.  The Trustee agreed to the FDIC's request for a 30-day extension.

23.    The very next day, April 13, 2009, the FDIC sent the Trustee a letter indicating that it had determined to disallow the Trustee's claim (the "FDIC's Response").  The FDIC provided only a terse, one-sentence reason for the disallowance:  "The facts and amount of damages, if any, are in dispute and therefore were not fixed and certain as of bank failure on July 11, 2008."  This response is surprising given the FDIC's continuing failure to provide the Trustee with the books, records and information requested repeatedly by the Trustee,

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

1  particularly since the Trustee stated repeatedly in the Trustee Proof of Claim that the FDIC's

2  continuing failure to provide the Trustee with the requested documents and information has

3  prevented the Trustee from evaluating any and all claims Bancorp may have against

4  IndyMac Bank and the FDIC.

5          24.     Pursuant to Section 11 of the FDI Act, the Trustee may "request administrative

6  review" of the Proof of Claim or may file suit in federal district court.  12 U.S.C.

7  § 1821(d)(6)(A).  On information and belief, the FDIC does not provide a mechanism for

8  requesting administrative review of the Trustee Proof of Claim.  Indeed, the FDIC's

9  Response does not set forth any administrative review process, stating only that the Trustee

10  has the right to file a lawsuit on the Trustee Proof of Claim in federal district court.

11          25.     Notwithstanding the FDIC's disallowance of the claim, each claim asserted in

12  the Trustee Proof of Claim is a valid and proved claim against the IndyMac Bank

13  Receivership and the FDIC, acting as Receiver of IndyMac Bank, is obligated to pay such

14  claims in accordance with 12 U.S.C. § 1821(d)(11).

15          26.     Under 12 U.S.C. § 1821(d)(6)(A), the United States District Courts for the

16  District of Colombia and the Central District of California have jurisdiction to review the

17  FDIC's decision to disallow the claims of asserted in the Trustee Proof of Claim *de novo*.

18  *See, e.g.*, *Freeman v. FDIC*, 56 F.3d 1394, 1400 (D.C. Cir. 1995) ("[U]nder section

19  1821(d)(6)(A), [claimant] had recourse to de novo judicial review of the FDIC's denial of

20  [their] claim."); *Benjamin Franklin Shareholders Litig. Fund v. FDIC*, 501 F. Supp. 3d 103,

21  106 (D.D.C. 2007) ("[T]his Court reviews de novo claims filed with, and processed by the

22  FDIC under its administrative claims process.").

23          27.     The Trustee will file a lawsuit in the United States District Court for the

24  District of Columbia to allow the Trustee Proof of Claim pursuant to 12 U.S.C.

25  § 1821(d)(6)(A).

26  **Downstream Transfers**

27          28.     Notwithstanding the FDIC's failure to provide all of the information and

28  documents requested by the Trustee, the Trustee has learned that Bancorp transferred

5

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

substantial funds to IndyMac Bank. The Trustee has learned that, from 2006 to 2008, Bancorp downstreamed to IndyMac Bank at least $736,437,000 through several wire transfers, as described in greater detail below (the "Identified Transfers").

29.    The Trustee is informed and believes and hereby alleges that there may be additional transfers from 2006 to 2008 to or for the benefit of IndyMac Bank and/or its direct and indirect subsidiaries that the Trustee has been unable to discover due to FDIC's failure to provide the Trustee with the information he has requested (collectively with the Identified Transfers, the "Downstream Transfers").

30.    On information and belief, on the dates these Downstream Transfers were made, Bancorp (i) was insolvent or rendered insolvent as a result of these transfers and/or (ii) was engaged in a business or transaction, or was about to engage in a business or transaction for which any property remaining with Bancorp was an unreasonably small capital. Many of the Downstream Transfers were in violation of Bancorp's policies.

31.    Indeed, Bancorp's pattern of making downstream transfers in violation of its own policies began before 2006. A memorandum from Bancorp's Treasurer to Bancorp's Board, dated January 11, 2006, states that Bancorp's downstream transfers in the fourth quarter of 2005 violated Bancorp's internal minimum liquidity policy and left Bancorp nearly 4% below Bancorp's requirement that it maintain liquid assets at least equal to twelve months of projected cash outflows on stock dividends and interest payments on unsecured debt.

32.    In 2006, Bancorp downstreamed at least $354,127,000 to IndyMac Bank. Specifically, Bancorp downstreamed $20,000,000 on March 31, 2006, $117,900,000 on June 30, 2006, $136,227,000 on September 30, 2006, and $80,000,000 at or around the close of the fourth quarter of 2006.

33.    On information and belief, some or all of the Downstream Transfers during 2006 occurred because of Bancorp's concern to maintain certain risk-based capital ratios with respect to IndyMac Bank, irrespective of Bancorp's own capital needs and financial condition.

6

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

34.    In 2007, Bancorp downstreamed at least $260,000,000 to IndyMac Bank, $25,000,000 at or around the close of the first quarter of 2007; $175,000,000 at or around the close of the third quarter of 2007; and $60,000,000 at or around the close of the fourth quarter of 2007.

35.    On information and belief, some or all of the Downstream Transfers during 2007 occurred because of Bancorp's concern to maintain certain risk-based capital ratios with respect to IndyMac Bank, irrespective of Bancorp's own capital needs and financial condition.  During 2007 and despite such capital contributions, senior management at both Bancorp and IndyMac Bank acknowledged significant concerns about IndyMac Bank's liquidity and capitalization.  Senior management also expressed a lack of confidence in IndyMac Bank's profitability, acknowledging that Bancorp's stock price was declining and that IndyMac Bank needed to cut operating costs.

36.    Further, senior management recognized the importance of raising sufficient capital to ensure survivability, acknowledged the possibility of a run on IndyMac Bank and even began discussing the possibility of selling the entire company.  Concurrent with its serious concerns and significant capital support of IndyMac Bank, senior management, on information and belief, was overly optimistic in its forecasts and profitability projections, disregarding or seriously underestimating, for example, significant market and credit risks to the detriment of both Bancorp and IndyMac Bank.

37.    In 2008, Bancorp downstreamed at least $122,310,000 to IndyMac Bank, despite the fact that the collapse of Bancorp and IndyMac Bank was increasingly probable and despite senior management's recognition that making further capital contributions would deplete Bancorp's cash reserves.  The continuing deteriorating financial condition of Bancorp and IndyMac Bank was undeniable.  Senior management again recognized the very real risk of a run on IndyMac Bank as well as the necessity of selling the company or finding further financing.

38.    Specifically, and despite such concerns, Bancorp downstreamed $72,310,000 to IndyMac Bank at or around the close of the first quarter of 2008 and downstreamed

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

$50,000,000 on May 9, 2008 ($18,000,000 of which was backdated to March 31, 2008 from May 9, 2008).

39.      On information and belief, Bancorp received less than a reasonably equivalent value and less than fair consideration in exchange for each of the Downstream Transfers alleged herein (or by amendment).  Indeed, Bancorp received no consideration for most, if not all, of the Downstream Transfers.

**Tax Refunds**

40.      On February 6, 2003, Bancorp and IndyMac Bank entered into the Amended and Restated Tax Sharing Agreement ("Tax Sharing Agreement").

41.      On information and belief, Bancorp filed federal, state and local consolidated tax returns on behalf of itself and its subsidiaries—including IndyMac Bank—for the 2002, 2003, 2004, 2005 and 2006 tax years.

42.      In a letter dated August 15, 2008, without seeking or obtaining relief from the automatic stay in effect in the Bankruptcy Case under 11 U.S.C. § 362, the FDIC purported to repudiate the Tax Sharing Agreement.

43.      The FDIC thereupon filed a 2007 federal tax return and a 2005 amended federal tax return on behalf of IndyMac Bank and its subsidiaries on or around September 15, 2008.

44.      The Trustee filed, on behalf of Bancorp, a 2007 consolidated federal tax return on September 15, 2008.  Under this 2007 consolidated tax return, a refund in the amount of $2,228,386 is due, as well as a refund of $11,152,072 as a result of carrying back losses to the 2005 tax year. On information and belief, the IRS is in the process of performing a "joint committee review" to determine whether an additional $199,459 may be due under the 2007 consolidated federal tax return.[2]

---

[2]      Additional refunds may be due under the joint or consolidated state tax returns for several states in which Bancorp or its subsidiaries operated.  Bancorp asserts its right to those amounts as well and reserves its right to amend this Complaint to state those amounts more specifically.

8

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

45.     On information and belief, Bancorp is entitled to some or all refunds on behalf of itself and its subsidiaries, including IndyMac Bank, relating to some or all of the federal, state and local tax returns filed for tax years 2002 through 2007.

46.     Bancorp, as payor of the consolidated tax returns, is entitled to receive all refunds associated with the federal, state and local tax returns.  For example, under Treasury Regulation 1.1502-77(a), Bancorp, as the common parent of the consolidated group that includes IndyMac Bank, generally has the authority to act as the sole agent for the subsidiary members of the group with respect to all matters relating to the tax liability of the consolidated group.  Pursuant to this authority, Bancorp may file claims for refund.  And, any such refunds claimed in accordance with such authority are to be paid directly to Bancorp.

47.     The Internal Revenue Service ("IRS") has filed several proofs of claim in the Bankruptcy Case , the most recent of which asserts claims as of the Petition Date of $35,092,921.44 with respect to unassessed tax liabilities stemming from the 2004, 2005, 2007 and 2008 tax periods.

48.     Upon information and belief, the claimed unassessed tax liabilities from 2004, which amount to $1,057,706 of the unsecured priority claims, relate to the IRS' ongoing audit of certain aspects of the 2004 consolidated federal tax return.

### FIRST CLAIM FOR RELIEF:

### Disallowance of Claim Pursuant to 11 U.S.C. § 502(b)

49.     The Trustee repeats the allegations of paragraphs 1-48, inclusive, and incorporates them herein as if set forth verbatim.

50.     On November 26, 2008, the FDIC filed the FDIC Proof of Claim, which the Clerk of Bankruptcy Court has numbered 62.  A true and correct copy of the FDIC Proof of Claim is attached hereto as Exhibit B.

51.     The FDIC Proof of Claim asserts that IndyMac Bank is entitled to in excess of $5 billion based on alleged (i) tax related entitlements, (ii) capital maintenance obligations, (iii) claims based on avoidance and/or recovery of supposed fraudulent transfers, and (iv) tort

9

based claims.

52. Bankruptcy Code section 502(b) provides, in relevant part:

Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this
section, if such objection to a claim is made, the court, after notice and a
hearing, shall determine the amount of such claim in lawful currency of the
United States as of the date of the filing of the petition, and shall allow such
claim in such amount, except to the extent that–

(1) such claim is unenforceable against the debtor and property of the
debtor, under any agreement or applicable law for a reason other than
because such claim is contingent or unmatured;

11 U.S.C. § 502(b).

53. The FDIC Proof of Claim is invalid or unenforceable against Bancorp for a reason other than because such claim is contingent or unmatured. Without shifting the burden of proof, production, or persuasion, the Trustee, on information and belief, contends that the claims asserted in the FDIC Proof of Claim are invalid or unenforceable, *inter alia*, for the reasons set forth in paragraphs 54 through 58, and 61 through 69 below. The Trustee expressly reserves the right to amend based on discovery and to conform to proof.

54. On information and belief, the Trustee generally denies the legal and factual allegations made in sections 2, 3, 6.a, 6.b, 6.c, 6.d, 6.e, 7.a, 7.b, 7.c, 7.d, 7.e, 8.a, 8.b, 8.c, 8.d, 8.e, 9.a, 9.b, 9.c, and 10 of the FDIC Proof of Claim.

55. The Trustee further alleges that the allegations made in sections 2, 3, 6.a, 6.b., 6.c, 6.d, 6.e, 7.a, 7.b, 7.c, 7.d, 7.e, 8.a, 8.b, 8.c, 8.d, 8.e, and 10 of the FDIC Proof of Claim fail to state a claim on which relief can be granted or a valid basis in law for a claim against the Estate. In particular, and without limiting the generality of the forgoing, (i) section 6.a. fails to allege facts that constitute unjust enrichment, breach of contractual duties of Bancorp to IndyMac Bank (if such duties exist), or breach of fiduciary duties of Bancorp to IndyMac Bank (if such duties exist); (ii) section 7.a fails to allege facts giving rise to an enforceable payment obligation of Bancorp or its estate; (iii) sections 8.a, 8.c, and 8.e fail to allege facts

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

10

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

that evidence an intent to hinder, delay or defraud IndyMac Bank with adequate specificity; (iv) sections 8.b, 8.d, and 8.e fail to allege claims that the FDIC has standing to pursue; (v) section 10 fails to allege facts demonstrating that Bancorp is liable for breaches of fiduciary duties owed by the directors and officers of Bancorp to IndyMac Bank (to the extent that such duties exist); and (vi) section 10 fails to allege any unlawful conduct giving rise to an indemnity or contribution right of IndyMac Bank.

56.    The Trustee further alleges that it may offset or recoup any amounts allowed under the Trustee Proof of Claim against allowed amounts under the FDIC Proof of Claim that it has asserted in the IndyMac Bank receivership or the tax refunds to which it is entitled.

57.    Without limiting the forgoing, the Trustee further alleges that it may offset or recoup any damages proximately caused by the FDIC's unilateral repudiation of the Tax Sharing Agreement in violation of the automatic stay, as referred to in Paragraph 42, above.

58.    Without limiting the foregoing, to the extent IndyMac Bank or the FDIC is or was entitled to any portion of the above-referenced tax refunds, notwithstanding the Trustee's position set forth herein, any amounts owed to IndyMac Bank from the refunds must be used to offset or recoup (1) any amounts owed to the IRS stemming from the IRS' proof of claim filed in the Bankruptcy Case or other claims that it may assert against Bancorp that are based upon IndyMac Bank's separate tax liability, as well as (2) any other adjustments that Bancorp may determine need to be made to the income, gain, losses, deductions or credits with respect to other tax years for which Bancorp filed consolidated tax returns on behalf of IndyMac Bank.

59.    Therefore, the FDIC's Claims should be disallowed or, if allowed at all, only allowed in an amount that reflects (a) enforceable obligations against Bancorp under applicable law and (b) an appropriate credit for the offsets and recoupment set forth hereinabove (including but not limited to the Trustee Proof of Claim).

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

### SECOND CLAIM FOR RELIEF:

### Disallowance of Claim Pursuant to 11 U.S.C. § 502(d)

60.     The Trustee repeats the allegations of paragraphs 1-48, inclusive, and incorporates them herein as if set forth verbatim.

61.     Bancorp received less than a reasonably equivalent value in exchange for the Downstream Transfers.  Indeed, on information and belief, Bancorp received no consideration whatsoever for most if not all of the Downstream Transfers.

62.     On information and belief, Bancorp on the dates the Downstream Transfers were made: (i) was insolvent or rendered insolvent as a result of these transfers; and/or (ii) was engaged in a business or transaction, or was about to engage in a business or transaction, for which any property remaining with Bancorp was an unreasonably small capital.

63.     The Downstream Transfers are avoidable constructively fraudulent transfers under the California Uniform Fraudulent Transfer Act, Cal. Civil Code §§ 3439.01, *et seq.* and/or Section 548(a)(1)(B) of the Bankruptcy Code.

64.     Pursuant to 11 U.S.C. § 544(b), the Trustee may avoid any transfer of an interest of Bancorp in property or any obligation incurred by Bancorp that is avoidable under applicable law by a creditor holding an unsecured claim that is allowable under 11 U.S.C. § 502.

65.     On information and belief, there is a creditor of Bancorp that holds an unsecured claim that is allowable under 11 U.S.C. § 502 and whose claim arose prior to each of the Downstream Transfers.

66.     In the event that it is determined that any of the Downstream Transfers identified above (or via amendment) were made for or on account of antecedent indebtedness and at a time while Bancorp was insolvent and at a time that Bank was an insider of Bancorp for purposes of 11 U.S.C. § 101(31).

67.     As a result, in the event that it is determined that any of the Downstream Transfers identified above (or via amendment) were made for or on account of antecedent

1    indebtedness, the Downstream Transfers are avoidable preferential transfers under section

2    547 of the Bankruptcy Code.

3        68.    Bankruptcy Code section 502(d) provides, in relevant part:

4            Notwithstanding subsections (a) and (b) of this section, the court shall

5        disallow any claim of any entity from which property is recoverable under

6        section 542, 543, 550, or 553 of this title or that is a transferee of a transfer

7        avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of

8        this title, unless such entity or transferee has paid the amount, or turned over

9        any such property, for which such entity or transferee is liable under section

10        522(i), 542,  543, 550, or 553 of this title.

11    11 U.S.C. § 502(d).

12        69.    As a result of the Downstream Transfers indentified above (or via amendment),

13    IndyMac Bank was the recipient of property avoidable and/or recoverable under Bankruptcy

14    Code sections 544(b), 547, 548 and 550.  In particular and without limiting the generality of

15    the forgoing, the Downstream Transfers were constructively fraudulent conveyances that are

16    avoidable under the California Uniform Fraudulent Transfer Act and Bankruptcy Code

17    sections 544 and 548 and recoverable under Bankruptcy Code section 550.  In the event that

18    it is determined that any of the Downstream Transfers identified above (or via amendment)

19    were made for or on account of antecedent indebtedness, the Downstream Transfers are

20    avoidable preferential transfers under section 547 of the Bankruptcy Code.

21        70.    Therefore, the Court should enter an order disallowing FDIC Claims unless

22    and until the FDIC has turned over to the Trustee the property transferred, or paid the

23    Trustee the value of such property, for which the FDIC is liable under Bankruptcy Code

24    § 550 (each of which will be identified at trial), including but not limited to, the Downstream

25    Transfers identified above (or via amendment).

26                    **THIRD CLAIM FOR RELIEF:**

27            **Subordination of Claim Pursuant to 11 U.S.C. § 510(b)**

28        71.    The Trustee repeats the allegations of paragraphs 1-48, inclusive, and

13

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

1    incorporates them herein as if set forth verbatim.

2        72.    Bankruptcy Code section 510(b) provides:

3            For the purpose of distribution under this title, a claim arising from

4    rescission of a purchase or sale of a security of the debtor or of an affiliate of

5    the debtor, for damages arising from the purchase or sale of such a security,

6    or for reimbursement or contribution allowed under section 502 on account

7    of such a claim, shall be subordinated to all claims or interests that are senior

8    to or equal the claim or interest represented by such security, except that if

9    such security is common stock, such claim has the same priority as common

10   stock.

11   11 U.S.C. § 510(b).

12       73.    Some or all claims in the FDIC Proof of Claim are claims for damages arising

13   from the purchase or sale of Bancorp stock, or for reimbursement or contribution allowed

14   under section 502 on account of such a claim, including the claim based on "indemnity or

15   contribution rights that Bank is entitled to assert against Bancorp due to Bancorp's unlawful

16   conduct relating to pending ERISA, securities class actions and other claim to which Bank is

17   or may be named a defendant."

18       74.    Therefore, the Court should subordinate the FDIC Claims to the general

19   unsecured claims against the Bancorp estate to the full extent permitted by Bankruptcy Code

20   section 510(b).

21                      **FOURTH CLAIM FOR RELIEF:**

22          **Subordination of Claim Pursuant to Bankruptcy Code Section 510(c)**

23       75.    The Trustee repeats the allegations of paragraphs 1-48, inclusive, and

24   incorporates them herein as if set forth verbatim.

25       76.    Bankruptcy Code section 510(c) provides, in relevant part:

26            Notwithstanding subsections (a) and (b) of this section, after

27        notice and a hearing, the court may–

28            (1) under principles of equitable subordination, subordinate for

                                    14

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

1      purposes of distribution all or part of an allowed claim to all or

2      part of another allowed claim or all or part of an allowed interest

3      to all or part of another allowed interest.

4   11 U.S.C. § 510(c).

5      77.    IndyMac Bank engaged in inequitable conduct, including but not limited to,

6   the conduct described in this Complaint, that has resulted in injury to creditors or the

7   conferring of an unfair advantage on the FDIC as successor to IndyMac Bank.  This

8   inequitable conduct has resulted in harm to Bancorp and to its entire creditor body.[3]

9      78.    The FDIC Proof of Claim is subject to equitable subordination based upon the

10  inequitable conduct of IndyMac Bank.

11     79.    IndyMac Bank is an insider of Bancorp (under the definition of the Bankruptcy

12  Code) and owed fiduciary duties to Bancorp.

13     80.    The interests of IndyMac Bank were improperly placed ahead of the interests

14  of Bancorp and its creditors, to the detriment of Bancorp and its creditors.

15     81.    IndyMac Bank engaged in unsound transactions that caused severe losses to

16  Bancorp, failed to properly review and act upon opportunities to raise much needed capital

17  from outside investors and/or find purchasers for IndyMac Bank's assets, disregarded the

18  lack of loan quality and other business risks inherent in the business model of IndyMac

19  Bank, and failed to recognize and act upon financial red flags concerning the weak financial

20  condition of IndyMac Bank (and Bancorp)—all of which was to the severe detriment of

21  Bancorp and its creditors.

22     82.    IndyMac Bank is responsible for its officers and directors who breached their

23  fiduciary duties to Bancorp, including, without limitation, their duties of care, loyalty, duty

24

25  [3]  The Trustee investigation is ongoing, and the Trustee reserves its right to amend this
26     Complaint.  Without limiting the foregoing, the Trustee hereby notifies the FDIC that it is
       investigating the facts underlying the Audit Report of the U.S. Department of the
27     Treasury, Office of Inspector General entitled "Safety and Soundness: Material Loss
       Review of IndyMac Bank, FSB" (OIG-09-032).
28

Klee, Tuchin, Bogdanoff & Stern LLP
1999 Avenue of the Stars, 39th Floor
Los Angeles, California 90067-6049
Telephone: (310) 407-4000

of good faith and duty of oversight.  IndyMac Bank issued materially false and misleading statements concerning IndyMac Bank's business and financial results, its prospects, and the risks associated with the business strategy.  IndyMac Bank issued public statements that touted IndyMac Bank 's business and financial performance, but which failed to disclose fully problems with IndyMac Bank's internal controls and underwriting practices and that IndyMac Bank maintained inadequate provisions for loan losses.  Bancorp's general unsecured creditors are less likely to recover the full amounts due them because of the conduct of IndyMac Bank.

83.     Based on the materially misleading statements and the failures to disclose, Bancorp's general unsecured creditors were induced to extend credit to Bancorp without knowledge of IndyMac Bank's or the Bancorp's true financial condition.  Based on the materially misleading statements and the failures to disclose, Bancorp was induced to make the Downstream Transfers, in violation of its own policies, notwithstanding the fact that Bancorp received less than a reasonably equivalent value and less than fair consideration for each of such transfers.

84.     Principles of equitable subordination require that the FDIC Proof of Claim be equitably subordinated to the general unsecured claims against Bancorp.

85.     Equitable subordination as requested herein is consistent with the provisions and purposes of the Bankruptcy Code.

86.     Therefore, the Court should equitably subordinate the FDIC Proof of Claim to the general unsecured claims against the Bancorp estate.

### FIFTH CLAIM FOR RELIEF:

### Declaration that Bancorp Is Entitled to Receive Tax Refunds

87.     The Trustee repeats the allegations of paragraphs 1-48, inclusive, and incorporates them herein as if set forth verbatim.

88.     An actual controversy has arisen between the Trustee and FDIC regarding the respective entitlements of the Trustee and the FDIC to receive refunds in connection with Bancorp consolidated tax returns for the years 2004 through 2007.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

89.    The Trustee contends that he, as the successor to Bancorp is entitled to receive any and all refunds in connection with the Bancorp consolidated tax returns for the years 2004 through 2007 and that any legal right of the FDIC or IndyMac Bank to tax refunds is properly made, if at all, solely as general unsecured claims against the estate, subject to the objection and causes of actions set forth in this Complaint.

90.    The Trustee is informed and believes and thereupon alleges that the FDIC disputes this contention and asserts that it is entitled to some or all refunds in connection with the Bancorp consolidated tax returns for the years 2004 through 2007.

91.    To the extent that the FDIC bases any claim to the tax refunds or defense to the Trustee's claims against arising out of, deriving from or relating to actions in violation of the automatic stay of 11 U.S.C. § 362, such claims and defenses are not assertable and void as a matter of law.

92.    The controversy is definite and concrete.

93.    The Trustee and FDIC have adverse interests.

94.    The controversy between the Trustee and FDIC is real and immediate.

95.    Under 11 U.S.C. § 105 and 28 U.S.C. §§ 2201 & 2202, the Trustee is entitled to a declaratory judgment that he, as Bancorp's successor, is entitled to the refunds in connection with the Bancorp consolidated tax returns for the years 2004 through 2007, and that any legal right of the FDIC or IndyMac Bank to tax refunds is properly made, if at all, solely as general unsecured claims against the estate, subject to the objection and causes of actions set forth in this Complaint.

## RESERVATION OF RIGHTS

96.    Due to the failure of the FDIC to respond to the Trustee's repeated discovery requests,  the Trustee's investigation is ongoing.  The Trustee expressly reserves the right to amend, modify or supplement this Complaint, to file additional objections to any other claims (filed or not) that may be asserted against the estate, to seek the equitable subordination of such claims (if such claims are otherwise allowable), and to assert other and different counterclaims.

17

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

# PRAYER FOR RELIEF

WHEREFORE, the Trustee respectfully requests that this Court enter judgment in his favor as follows:

A.  On the First Claim for Relief, disallowing the FDIC Proof of Claim, or, if that claim is allowed, only allowing it only in an amount that reflects only to the (a) enforceable against Bancorp under applicable law and (b) an appropriate credit for the offsets and recoupment set forth hereinabove (including but not limited to the Trustee Proof of Claim);

B.  On the Second Claim for Relief, disallowing the FDIC Proof of Claim unless and until the FDIC has turned over to the Trustee the property transferred, or paid the Trustee the value of such property, for which the FDIC is liable under Bankruptcy Code § 550, including but not limited to, the Downstream Transfers identified above (or by amended complaint);

C.  On the Third and Fourth Claims for Relief, subordinating the FDIC Claims to the general unsecured claims against the Bancorp estate;

D.  On the Fifth Claim for Relief, declaring that the Trustee, as Bancorp's successor, is entitled to the refunds in connection with the Bancorp consolidated tax returns for the years 2004 through 2007 and that any legal right of the FDIC or IndyMac Bank to tax refunds is properly made, if at all, solely as general unsecured claims against the estate, subject to the objection and causes of actions set forth in this Complaint.

E.  On all Claims for Relief, granting reasonable attorneys' fees and costs incurred in connection with the litigation of the FDIC Claims;

F.  On all Claims for Relief, directing that the FDIC provide an accounting of all transfers of interests of the Bancorp in property made during 2006, 2007 and 2008; and

18

1          G.     On all Counts, granting such other and further relief as the Court deems just

2    and proper.

3

4    DATED:  June 11, 2009               KLEE, TUCHIN, BOGDANOFF & STERN LLP

5                                     */s/ Matthew Heyn*

6                                         Lee R. Bogdanoff

7                                         David M. Stern

8                                         Matthew C. Heyn

                                *General Bankruptcy Counsel for Alfred H. Siegel,*

                                            *Chapter 7 Trustee*

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

19

FORM B104  (08/07)                                                                    2007 USBC, Central District of California

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Page 2) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS | DEFENDANTS |
|---|---|
| **ATTORNEYS** (Firm Name, Address, and Telephone No.) | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only)<br>☐ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☐ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

## NATURE OF SUIT
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**

☐ 11-Recovery of money/property - §542 turnover of property

☐ 12-Recovery of money/property - §547 preference

☐ 13-Recovery of money/property - §548 fraudulent transfer

☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**

☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**

☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**

☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**

☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims

☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud

☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**

☐ 61-Dischargeability - §523(a)(5), domestic support

☐ 68-Dischargeability - §523(a)(6), willful and malicious injury

☐ 63-Dischargeability - §523(a)(8), student loan

☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)

☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**

☐ 71-Injunctive relief – imposition of stay

☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**

☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**

☐ 01-Determination of removed claim or cause

**Other**

☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*

☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐   Check if this case involves a substantive issue of state law | ☐   Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐   Check if a jury trial is demanded in complaint | Demand  $ |

Other Relief Sought

FORM B104 (08/07), page 2                                                    2007 USBC, Central District of California

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR | | BANKRUPTCY CASE NO. |
| DISTRICT IN WHICH CASE IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE | PRINT NAME OF ATTORNEY (OR PLAINTIFF) | |

# INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendents.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not presented by an attorney, the plaintiff must sign.

| Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number | FOR COURT USE ONLY |
|---|---|

*Attorney for Plaintiff*

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA

| In re: | CHAPTER _____ |
|---|---|
| | CASE NUMBER |
| Debtor. | ADVERSARY NUMBER |
| Plaintiff(s), | *(The Boxes and Blank Lines below are for the Court's Use Only) (Do Not Fill Them In)* |
| vs. | **SUMMONS AND NOTICE OF STATUS CONFERENCE** |
| Defendant(s). | |

TO THE DEFENDANT:  A Complaint has been filed by the Plaintiff against you.  If you wish to defend yourself, you must file with the Court a written pleading, in duplicate, in response to the Complaint.  You must also send a copy of your written response to the party shown in the upper left-hand corner of this page.  Unless you have filed in duplicate and served a responsive pleading by _____, the Court may enter a judgment by default against you for the relief demanded in the Complaint.

A Status Conference on the proceeding commenced by the Complaint has been set for:

| **Hearing Date:** | **Time:** | **Courtroom:** | **Floor:** |
|---|---|---|---|

❑  **255 East Temple Street, Los Angeles**        ❑  **411 West Fourth Street, Santa Ana**

❑  **21041 Burbank Boulevard, Woodland Hills**    ❑  **1415 State Street, Santa Barbara**

❑  **3420 Twelfth Street, Riverside**

PLEASE TAKE NOTICE that if the trial of the proceeding is anticipated to take less than two (2) hours, the parties may stipulate to conduct the trial of the case on the date specified, instead of holding a Status Conference.  Such a stipulation must be lodged with the Court at least two (2) Court days before the date set forth above and is subject to Court approval.  The Court may continue the trial to another date if necessary to accommodate the anticipated length of the trial.

Date of Issuance: _____

**JON D. CERETTO**
**Clerk of the Bankruptcy Court**

By: _____
*Deputy Clerk*

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009 (COA-SA)*                                    **F 7004-1**

Summons and Notice of Status Conference - *Page 2*                                    **F 7004-1**

| In re                           (SHORT TITLE) | CASE NO.: |
|---|---|
|                                          Debtor(s). | |

**NOTE**: When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

A true and correct copy of the foregoing document described as _____
_____ will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document.  On _____ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email addressed indicated below:

☐ Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On _____ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow.  Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method) by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____     _____     _____
       *Date*                         *Type Name*                         *Signature*

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Summons and Notice of Status Conference - *Page 3*                                    **F 7004-1**

| In re                    (SHORT TITLE) | CASE NO.: |
|---|---|
|                                     Debtor(s). | |

**ADDITIONAL SERVICE INFORMATION** (if needed):

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009 (COA-SA)*                                                          **F 7004-1**